646 So.2d 1373 (1994)
Phtruda WILLIAMS and Floyd Williams, Jr.
v.
SPRING HILL MEMORIAL HOSPITAL.
1930160.
Supreme Court of Alabama.
September 16, 1994.
Edward L. Hardin, Jr. and Jill T. Karle of Hardin & Hawkins, Birmingham, for appellants.
Michael K. Wright and Sybil Vogtle Abbot of Starnes & Atchison, Birmingham, for appellee.
MADDOX, Justice.
The plaintiffs appeal from a summary judgment in a medical malpractice case. The sole issue is one this Court has considered before: Whether Alabama should abandon its traditional rules of proximate cause and recognize the "loss of chance doctrine." In McAfee v. Baptist Medical Center, 641 So.2d 265 (Ala.1994), this Court considered cases involving a factual setting quite similar to the one presented here. In each of those medical malpractice cases, after the defendant physician or physicians produced evidence that their actions did not cause the patient's condition to worsen, the trial court ruled that the plaintiffs had failed to present substantial evidence that the alleged negligence of the *1374 physicians probably caused the injuries that the plaintiffs complained of; in each case, the court entered a summary judgment and this Court affirmed.
In this case, the issue is whether the plaintiffs, Phtruda Williams and her husband Floyd Williams, Jr., through their expert witness, Dr. Thomas Browne, produced substantial evidence that the defendant Spring Hill Memorial Hospital ("Spring Hill") probably caused the injury to Mrs. Williams.
The plaintiffs alleged medical negligence against Dr. Joseph Ray; Mobile Orthopedic Center, P.A.; Dr. Jon Botts; C.R.N.A. Paula Green and Anesthesia Associates of Mobile, P.C.; as well as against Spring Hill Memorial Hospital ("Spring Hill").
Phtruda Williams entered Spring Hill Hospital to undergo a lumbar laminectomy with fusion. Sometime after the surgery, she was unable to move her feet, but, the plaintiffs allege, the surgeon was not made aware of this fact until 12 hours after the surgery. The surgeon, Dr. Ray, and the anesthesiologist, Dr. Botts, both testified that they would have instituted certain therapies earlier had they been notified. Mrs. Williams, now a paraplegic, contends that her paraplegia could have been arrested and improved (with steroid treatment) had the Spring Hill nurses notified the physicians as soon as her paralysis was noted.
Spring Hill filed a motion for summary judgment, supported by evidence that its actions, or lack of action, did not cause Mrs. William's condition to worsen. As the trial court had done in McAfee, the trial court here ruled that the plaintiffs had failed to present substantial evidence that the alleged negligence of the Hospital probably caused the injuries that the plaintiffs complained of, and it entered a summary judgment for Spring Hill. We cannot distinguish the facts of this case from those presented in McAfee.
In McAfee, this Court wrote the following regarding a summary judgment in a medical malpractice case,
"Rule 56 must be read in conjunction with the `substantial evidence rule' as defined by Ala.Code 1975, § 6-5-542(5), part of the Alabama Medical Liability Act:
"`(5) SUBSTANTIAL EVIDENCE. Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.'
"`[W]hen the movant makes a prima facie showing that no genuine issue of material fact exists, ... the burden shifts to the nonmovant to show `substantial evidence' in support of his position.' Leonard v. Providence Hospital, 590 So.2d 906, 907 (Ala.1991).
"In medical malpractice cases, the plaintiff must prove that the alleged negligence `probably caused the injury.' Parrish v. Russell, 569 So.2d 328, 330 (Ala.1990), citing Williams v. Bhoopathi, 474 So.2d 690, 691 (Ala.1985). This has been the standard in Alabama for decades. In the 1929 case of McKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929), this Court stated:
"`The proof must go further than merely show that an injury could have occurred in an alleged wayit must warrant the reasonable inference and conclusion that it did so occur as alleged and the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'
"219 Ala. at 168, 121 So. at 540."
McAfee v. Baptist Medical Center, 641 So.2d at 265-67.
In McAfee, this Court stated, "If, as the defendants suggest, the plaintiffs are in fact asking this Court to abandon Alabama's traditional rules of proximate cause and to recognize the `loss of chance doctrine,' we decline to do so." 641 So.2d at 267. The Court restated that Alabama law requires that a recovery not be based upon a mere possibility; it cited Baker v. Chastain, 389 So.2d 932, 934 (Ala.1980) (in turn citing Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87 (1958)), for the proposition that "[t]he rule in Alabama in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. *1375 There must be evidence that the negligence probably caused the injury."
In McAfee, we distinguished Parker v. Collins, 605 So.2d 824 (Ala.1992), wherein the Court had said that "the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care," citing Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (1974); Murdoch v. Thomas, 404 So.2d 580 (Ala.1981).
The trial court ruled that Spring Hill had made a prima facie showing that it was entitled to a judgment as a matter of law on the issue of causation. The Williamses' sole causation expert, Dr. Thomas Browne, did not provide the required expert testimony sufficient to submit the issue of causation to the jury. A medical malpractice plaintiff must establish (1) that the defendant breached the standard of care and (2) that this breach proximately caused the plaintiff's injuries; the plaintiff must establish this through expert testimony, unless the lack of skill or care is so apparent as to be within the comprehension of average laymen. Dobbs v. Smith, 514 So.2d 871 (Ala.1987); Howard v. Mitchell, 492 So.2d 1018 (Ala. 1986); Lightsey v. Bessemer Clinic, P.A., 495 So.2d 35 (Ala.1986); Holt v. Godsil, 447 So.2d 191 (Ala.1984). The Williamses failed to present substantial evidence that Spring Hill probably caused Mrs. Williams any injury or that earlier steroid intervention probably would have made any difference in the outcome or probably would have made any difference at all in Mrs. Williams's condition.
Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the other side to present substantial evidence that supports his position and creates a genuine issue of material fact. Leonard v. Providence Hospital, 590 So.2d 906, 907 (Ala.1991).
The plaintiffs' own expert, Dr. Browne, in his deposition, testified that even if steroid therapy had been administered to Mrs. Williams earlier, there was only a possibility that it would have made any difference in the outcome:
"Q.... Now, I want to hear this and make sure I understand it right. You, Dr. Thomas Browne, can guarantee to the world that in any patient who presents to you with an incomplete progressing lesion, you can stop the progression from the moment that you see that lesion?
"A. No, I mean that's ...
"Q. Of course not.
"A. But I'm saying that there is reasonable probability that if the deficit was incomplete in the post-operative period and then went on to completion, that some or all of the progression may have been prevented with steroids.

"Q. Or, with equal weight, some or all of that progression may not have been preventable with steroids, true?
"A. True."
(Emphasis supplied.) The trial court correctly determined that the Williamses had failed to present, through their expert, substantial evidence that the alleged negligence of Spring Hill "probably caused the injury." Cf. McKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929); Peden v. Ashmore, 554 So.2d 1010 (Ala.1989); Sasser v. Connery, 565 So.2d 50 (Ala.1990); Smith v. Medical Center East, 585 So.2d 1325 (Ala.1991); Parker v. Collins, 605 So.2d 824 (Ala.1992); and Levesque v. Regional Medical Center Bd., 612 So.2d 445 (Ala.1993).
The judgment is due to be affirmed.
AFFIRMED.
SHORES, HOUSTON and STEAGALL, JJ., concur.
COOK, J., concurs in the result.
KENNEDY and INGRAM, JJ., dissent.
INGRAM, Justice (dissenting).
The majority affirms, based on McAfee v. Baptist Medical Center, 641 So.2d 265 (Ala. 1994), in which Justice Kennedy and I dissented. In McAfee, Justice Kennedy dissented, expressing his view that the plaintiff *1376 had presented substantial evidence creating a genuine issue of material fact and that the case should have been submitted to a jury. I concurred in Justice Kennedy's dissent. The majority in this case, as in McAfee, discusses whether Alabama should abandon its traditional rules of proximate cause and recognize the "loss of chance doctrine." However, the "loss of chance doctrine" is inapplicable in this case. As noted by the majority, the rule in medical malpractice cases is that there must be more than the mere possibility that the alleged negligence caused the injury; rather, there must be evidence that the negligence complained of probably caused the injury. Parker v. Collins, 605 So.2d 824 (Ala. 1992); Byrd v. Martin, 548 So.2d 442 (Ala. 1989).
In this case, the majority states that the testimony of the Williamses' expert witness, Dr. Browne, did not constitute substantial evidence that Spring Hill probably caused Phtruda Williams any injury or that earlier steroid intervention probably would have made any difference in the outcome or probably would have made any difference at all in Mrs. Williams's condition. They rely on the deposition testimony of Dr. Browne. He testified that even if steroid therapy had been administered to Mrs. Williams at an earlier time, there was only a possibility that it would have made any difference in the outcome:
"But I'm saying that there is reasonable probability that if the deficit was incomplete in the postoperative period and then went on to completion, that some or all of the progression may have been prevented with steroids."
(Emphasis supplied by majority opinion.)
The majority opinion places emphasis on the words "may have been prevented." Based on these words, the majority concludes that the Williamses failed to present substantial evidence that the alleged negligence of Spring Hill "probably caused the injury." Therefore, the majority affirms the summary judgment in favor of Spring Hill. However, Dr. Browne clarified his response in an affidavit submitted in response to the motion for summary judgment. Alabama law requires that expert testimony be viewed as a whole rather than separately from the balance of the testimony. Hines v. Armbrester, 477 So.2d 302 (Ala.1985). Dr. Browne stated in his affidavit that the probability is that steroids would have made a difference in the outcome of Mrs. Williams's case. Further, Dr. Browne stated that the negligence of the Spring Hill nurses in failing to provide pivotal pieces of information made it difficult to assess the effectiveness of steroids in Mrs. Williams's case. Dr. Browne's opinion is that if the nurses had adequately recorded Mrs. Williams's neurological condition, the use of steroids would have been instituted earlier and the likelihood of success with the use of them would probably have been greater. Based on his opinion taken in its entirety, one could conclude that the steroids "would probably" have helped Mrs. Williams had they been administered earlier.
However, the analysis does not stop with the determination of whether Spring Hill probably caused the injury complained of. Parker requires evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Further, Mrs. Williams must produce evidence to show that her condition was adversely affected by the alleged negligence.
The deposition testimony and the affidavit of the Williamses' expert witness, Dr. Browne, when taken as a whole, clearly state that Mrs. Williams would have been in a better position had the Spring Hill nurses' medical care not been substandard and that Mrs. Williams was adversely affected by Spring Hill's acts or omissions. I would hold that the Williamses presented substantial evidence creating a genuine issue of material fact. Rule 56(c), Ala.R.Civ.P. Therefore, I would reverse the judgment and remand the case for a trial on the merits.