PER CURIAM.
Tammie L. Boyles (“Boyles”), as mother and next friend of Colton Elijah Powell Boyles (“Eli”), a minor, filed a lawsuit on behalf of her son for injuries he allegedly sustained from an arterial stick while he was hospitalized at University of Alabama at Birmingham Hospital (“UAB Hospital”).[1] Boyles appeals from a summary judgment in favor of Denise Dougherty, a registered nurse at UAB Hospital. We reverse and remand.

I. Facts and Procedural History

The evidence, viewed in the light most favorable to Boyles, shows the following: On September 24, 2009, Eli was born prematurely at UAB Hospital. On September 29, 2009, Eli’s treating physician ordered a blood culture, which was taken by Dougherty from Eli’s right arm. Later that day, Eli’s mother, who is also a nurse, noticed that Eli’s fingertips on his right hand were blue or “dusky.” Dougherty applied a warm compress to Eli’s right hand. The discoloration in Eli’s fingertips moved upward from his right hand toward his shoulder.
On October 1, 2009, Eli was transferred to Children’s Hospital of Alabama (“Gul- *684 dren’s Hospital”) for treatment of a bowel perforation. While at Children’s Hospital, the fingertips of Eli’s right hand auto-amputated or fell off. Boyles claims her son’s injury occurred as a result of an improper arterial stick to his right arm by Dougherty.
On February 22, 2011, Boyles sued, alleging that Dougherty’s nursing negligence caused the auto-amputation of Eli’s fingertips. The complaint alleged that Dougherty performed an arterial stick on the right hand/arm of Boyles’s infant son, Eli, instead of an arterial stick to his heel, causing “poor perfusion to his hand with resulting thrombosis of the fingertips.” In the complaint, Boyles contended that “the recommended location for blood collection on a newborn baby is the heel and the prior sticks for [her] infant son had been to his heel until [Dougherty] negligently caused or negligently allowed the arterial stick to be done at his right hand/arm.”
Dougherty filed an answer denying that she was guilty of negligence and denying that there was a causal relationship between her actions and the injury alleged in the complaint. Boyles identified Lauren Cooper, R.N., as an expert witness in this case.
On October 17, 2012, Dougherty filed a motion for a summary judgment premised on Boyles’s failure to offer expert testimony as to causation in the case.[2] Boyles filed a response to Dougherty’s summary-judgment motion arguing that Cooper was qualified to testify as an expert witness and that the Children’s Hospital records showed that the cause of the auto-amputation of Eli’s fingertips was “poor perfusion and thrombotic fingertips while at UAB [Hospital].” In opposing Dougherty’s summary-judgment motion, Boyles submitted: excerpts from her deposition; excerpts from Dougherty’s deposition; excerpts from Cooper’s deposition; UAB Hospital’s progress note dated September 30, 2009; certified copies of the medical records of Children’s Hospital; various photographs; and UAB Hospital’s Interdisciplinary Standard Regarding Arterial Punctures for Specimen Collection.
On November 21, 2012, the trial court entered a summary judgment in favor of Dougherty. The trial court concluded that a summary judgment in favor of Dougherty was proper because “[Boyles] lacks an expert capable of testifying as to causation [and] there has been no evidence presented to the [trial court] that [Eli]’s injuries were probably a result of a breach of the standard of care by Dougherty.” Boyles appealed.

II. Standard of Review

Boyles challenges the summary judgment in favor of Dougherty. In determining whether the trial court erred in entering the summary judgment, we consider the following:
“Under Rule 8, Ala. R. Civ. P., a complaint is sufficient if it puts the defendant on notice of the claims against him; however, the rule of generalized notice pleading may be qualified by rule or statute. Bethel v. Thom, 757 So.2d 1154, 1158 (Ala.1999). Section 6-5-551, Code of Ala.1975, provides that in any medical-malpractice action, ‘[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff.’ The plaintiff is prohibited ‘from introducing at trial evidence of any other act or omission.’
*685 “Substantial evidence is defined in the medical-malpractice context as ‘that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.’ § 6-5-542(5)[, Ala.Code 1975]. Rule 56, Ala. R. Civ. P., governing motions for summary judgment, must be read in conjunction with that definition of substantial evidence. Golden v. Stein, 670 So.2d 904, 907 (Ala.1995).
“This Court’s review of a summary judgment in a medical-malpractice case, as in other cases, is guided by the proposition that ‘this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.’ Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997), quoted in Hauseman v. University of Alabama Health Servs. Found., 793 So.2d 730, 734 (Ala.2000).
“If the movant in a medical-malpractice case makes a prima facie showing that there is no genuine issue of material fact, then, as in other civil cases, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Ex parte Elba Gen. Hosp. & Nursing Home, Inc., 828 So.2d 308, 311 (Ala.2001).
“ ‘To maintain a medical-malpractice action, the plaintiff ordinarily must present expert testimony from a “similarly situated health-care provider” as to (1) “the appropriate standard of care,” (2) a “deviation from that standard [of care],” and (3) “a proximate causal connection between the [defendant’s] act or omission constituting the breach and the injury sustained by the plaintiff.” ’
“Lyons v. Walker Reg’l Med. Ctr., 791 So.2d 937, 942 (Ala.2000) (bracketed language original).
“ ‘[A] medical malpractice plaintiff must produce substantial evidence that “the alleged negligence ‘probably caused the [complained of] injury,’ ” in order to survive a summary judgment motion, if the defendant has made a prima facie showing that no genuine issue of material fact exists as to the issue of causation.’
“Golden, 670 So.2d at 907.
“‘“To present a jury question, the plaintiff [in a medical-malpractice action] must adduce some evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury. A mere possibility is insufficient. The evidence produced by the plaintiff must have ‘selective application’ to one theory of causation.” ’
“Rivard v. University of Alabama Health Servs. Found., P.C., 835 So.2d 987, 988 (Ala.2002).”
Cain v. Howorth, 877 So.2d 566, 575-76 (Ala.2003). See Breland v. Rich, 69 So.3d 803, 814-15 (Ala.2011). Additionally, regarding causation, this Court has stated:
“ ‘[A] theory of causation is not mere conjecture, when it is deducible as a reasonable inference from “known facts or conditions,” Alabama Power Co. v. Robinson, 447 So.2d 148,153-54 (Ala.1983). “ ‘[I]f there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a judicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.’ ” Griffin Lumber Co. v. Harper, 247 Ala. 616, 621, 25 So.2d 505, 509 (1946) (quoting Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669 (1924)).’
“Dixon v. Board of Water & Sewer Comm’rs of Mobile, 865 So.2d 1161, 1166 (Ala.2003).”
*686 Miller v. Bailey, 60 So.3d 857, 867 (Ala.2010).

III. Analysis

On appeal, Boyles argues that the summary judgment was improper because, she says, she presented substantial evidence that Dougherty’s negligence probably caused Eli’s injury. Boyles contends that the record supports her contention that Dougherty breached the appropriate standard of care in her arterial stick to Eli’s arm, and, she says, the certified medical records from Children’s Hospital and the testimony by Cooper establish that the injury occurred as a result of the improper arterial stick by Dougherty.
Boyles alleged in her complaint that Eli sustained auto-amputation of his fingertips through negligence on the part of Dougherty. Dougherty filed a motion for a summary judgment, arguing that the only issue before the court was whether Boyles would be able to present testimony that any breach of the standard of care by Dougherty proximately caused Eli’s injury.
The record supports a “logical sequence of cause and effect” based on the time line and the absence of any other explanation in the record. See Miller v. Bailey, 60 So.3d at 867. Further, this logical sequence is corroborated under the facts of this case by certified medical records that were before the trial court and by the testimony of Boyles’s expert, Cooper. Boyles presented certified medical records and testimony that would support a reasonable inference that the negligent conduct of Dougherty probably caused the auto-amputation of Eli’s fingertips. See Miller. The evidence submitted by Boyles in opposition to Dougherty’s summary-judgment motion shows that Dougherty breached the appropriate standard of care in her arterial stick to Eli’s hand and in applying a warm compress to that hand, which worsened a problem with perfusion of blood circulation. The certified medical records establish that the injury occurred “following arterial stick.” The certified medical records from Children’s Hospital state that Eli had “poor perfusion of his right hand and thrombotic fingertips developed] while at UAB [Hospital].”
Boyles’s nurse expert, Cooper, testified that the arterial stick in this case was too high and that this could cause and did cause occluded blood flow to Eli’s right hand. Cooper testified:
“A. I believe that what caused the fingertips to turn black and ultimately be amputated was that when performing an ABG [arterial blood gas], you have to make sure that you have done the Allen’s test[3] or you have used an illuminator—
“Q. Okay.
“A. —to make sure that when you are in one artery getting your blood that there is sufficient blood to the rest of the hand. If the blood is taken in the incorrect spot, then you have occluded the entire hand. You may be drawing the blood and at that moment you may not realize it, but that entire hand will not have perfusion. It has got to be performed in the correct spot or that will cause lack of perfusion and eventually sepsis and cell death.
“Q. Information that we were provided about what your opinions were said that you were of the opinion that the arterial stick was too high up.
“A. Yes, sir.
*687 “Q. And that’s a paraphrase from me, that it should not be done above the wrist area.
“A. Uh-huh.
“Q. Is that correct?
“A. Yes, sir.
“Q. Is that one of your opinions?
“A. Yes, sir.
“Q. Is that what you were just talking about?
“A. Yes, sir.
“Q. What evidence did you find in the record that the arterial stick was above the wrist?
“A. Well, I believe because, like I said, what happens, it branches off at the wrist, and if it’s done in the correct spot, there would be no reason for sepsis and lack of perfusion.”
The certified medical records from Children’s Hospital provide that Eli developed poor perfusion of his right hand and thrombotic fingertips while he was at UAB Hospital. In addition, Dougherty acknowledged that an improperly performed stick can cause occlusion or blockage of blood flow to the hand. No contradictory evidence of any other plausible cause was presented by Dougherty.
We conclude that the certified medical records and the testimony sufficiently established causation for the purpose of rebutting Dougherty’s motion for a summary judgment. The medical records and the testimony are more than sufficient to create a question of fact as to whether the acts of Dougherty were the proximate cause of Eli’s injuries. The certified medical records, Cooper’s testimony, and Dougherty’s acknowledgment provides substantial evidence that the improperly performed arterial stick caused Eli’s injuries. Therefore, the summary judgment in favor of Dougherty was improper.

IV Conclusion

Based on the foregoing, we conclude that, under the facts of this case, the evidence is sufficient to “ ‘ “warrant the reasonable inference and conclusion that [Eli’s injuries] did so occur as alleged.” ’ ” Prowell v. Children’s Hosp. of Alabama, 949 So.2d 117, 130 (Ala.2006) (quoting McAfee v. Baptist Med. Ctr., 641 So.2d 265, 267 (Ala.1994), quoting in turn McKinnon v. Polk, 219 Ala. 167, 168, 121 So. 539, 540 (1929)). Boyles’s evidence sufficiently overcame Dougherty’s showing in support of her motion for a summary judgment. Therefore, we reverse the summary judgment entered in favor of Dougherty, and we remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and PARKER, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.
STUART, BOLIN, SHAW, and BRYAN, JJ., dissent.

. Boyles originally named as defendants UAB Hospital, UAB Health System, and Denise Dougherty, R.N. UAB Hospital does not exist as a separate entity. UAB Health System was dismissed on joint motion.

. Dougherty attached to her summary-judgment motion Boyles’s designation of Lauren Cooper, R.N., as her expert witness.

. According to the record, an Allen’s test is "a method of confirming radial artery occlusion.”