Gloria and Larry Williams appeal from the trial court's granting of the defendant-appellee's *Page 691 
motion for directed verdict in a medical malpractice case. We affirm.
This action arose as the result of a stillbirth of one of a set of triplets at the Grove Hill Memorial Hospital on February 15, 1981. The mother, Gloria Williams, had been a patient of Dr. Jack Dozier. Dr. Dozier referred his maternity patients to the appellee, Dr. Bharathi Bhoopathi, for treatment. Dr. Bhoopathi examined Mrs. Williams on three occasions prior to the deliveries. The doctor sent Mrs. Williams to Dr. D.W. Wager in Monroeville for an ultrasound test, which indicated she was carrying twins.
On the night of the births, Larry Williams drove his wife and her mother to Thomasville Hospital. They stayed there approximately fifteen minutes before they were informed that Dr. Bhoopathi worked at Grove Hill Memorial Hospital. After a twenty-minute drive, they arrived at Grove Hill.
Mrs. Williams, assisted by a nurse, immediately gave birth to the first child, a healthy boy. Dr. Bhoopathi arrived shortly thereafter. The doctor testified that when she examined Mrs. Williams, she saw the second child's hands were protruding from the womb (a double hand prolapse) and felt its shoulder. There is conflicting evidence as to whether Dr. Bhoopathi attempted to turn the baby. Mrs. Williams was put on a fetal heart monitor, which indicated a single fetal heartbeat. It is not clear whether this was before or after the disputed attempt to turn the baby. Dr. Bhoopathi performed a Caesarean section, assisted by Dr. Preston McDonald. The second male child was stillborn, but the third boy was healthy. The autopsy of the stillborn child showed he died of asphyxia during the first or second stages of labor.
The Williamses initially sued the Grove Hill Memorial Hospital and Drs. Dozier, Wager, McDonald, and Bhoopathi. The trial court granted summary judgment for the hospital and Dr. Wager and dismissed the actions against Drs. Dozier and McDonald on the Williamses' motion. Only the suit against Dr. Bhoopathi went to trial. The trial court granted Dr. Bhoopathi's motion for directed verdict at the close of the Williamses' evidence. The Williamses appeal.
The Williamses contend that delays caused by Dr. Bhoopathi's negligence resulted in the baby's death from lack of oxygen during delivery. They allege twofold negligence on the part of Dr. Bhoopathi: (1) she failed to tell the Williamses in which hospital she worked, causing them to go to the wrong hospital; and (2) she attempted to turn the baby instead of immediately performing a Caesarean section.
The rule in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury; there must be evidence that the negligence probably caused the injury. Baker v. Chastain, 389 So.2d 932
(Ala. 1980). If there is a scintilla of evidence in a malpractice case that the negligence complained of probably caused the injury, a jury question is presented. Orange v.Shannon, 284 Ala. 202, 224 So.2d 236 (1969).
Upon careful review of the record, we can find no evidence presented by the Williamses that Dr. Bhoopathi's acts or omissions probably caused the baby's death. Dr. McDonald, called as the Williamses' witness, testified that although it is standard medical practice to inform the patient which hospital to use, he saw no evidence that the delay in getting to the hospital contributed to the death in any way.
Dr. McDonald further testified that he did not see Dr. Bhoopathi attempt to turn the baby. He said that although the standard medical practice in a case with a hand prolapse is not to turn the baby, in such a case it might be helpful to attempt to turn the child. Dr. McDonald also testified he saw no evidence that an attempt to turn the child would have contributed to its death.
Nor did Dr. Bhoopathi, called as an adverse witness by the Williamses, testify *Page 692 
that any of her acts or possible omissions probably caused the child's death. The autopsy report showed that the child's lungs and heart were not fully developed, probably due to the fetal compression syndrome. Dr. Bhoopathi stated that the fetal compression syndrome is where the outer fetuses compress the middle fetus and its cord so that there is no circulation to the middle fetus. In her opinion, this compression caused the deficiency in the oxygen reaching the baby. Furthermore, although Dr. Bhoopathi denied attempting to turn the baby, she testified that, in her opinion, a half-hour or forty-five minute delay where there is a shoulder presentation but no cord prolapse would not kill the baby.
The Williamses contend that proximate cause in a medical malpractice action need not necessarily be established through an expert. This argument is moot in the instant case, since none of the lay witnesses expressed an opinion as to what caused the death. Since the Williamses introduced no evidence to support their contention that the delays caused the child's death, we hold that the trial court was correct in directing the verdict in favor of Dr. Bhoopathi.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and ADAMS, JJ., concur.